UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

DAVID I. MACMILLAN,

                Plaintiff,

-vs-                              Case No.  5:08-cv-351-Oc-10GRJ

LANE RODDENBERRY, individually, et al.,

                Defendants.

_____/

## O R D E R

     Plaintiff David I. MacMillan has filed a three-count Complaint under 42 U.S.C. § 1983

against the Defendants, the Sheriff of Lake County, Florida, and two Deputy Sheriffs (Doc.

1-2).[1] MacMillan alleges that the Defendants violated his Fifth and Fourteenth Amendment

rights when they used excessive force to effectuate his arrest on September 1, 2004.

MacMillan further alleges that the Sheriff was deliberately indifferent to his serious medical

needs when he was denied treatment while a pretrial detainee for injuries he suffered

during his arrest.

---

[1]MacMillan brought suit against another Deputy Sheriff, Greg Bare, but voluntarily dismissed all claims against him on October 5, 2009 (Docs. 15, 19).  He also listed three "John Doe" Defendants in his Complaint, but to date has not identified these Defendants, or put forth any argument in support of any claims against these unknown Defendants.  The Court therefore concludes that MacMillan has abandoned any claims he may have had against these "John Doe" Defendants, and will dismiss them from the case. See Fed. R. Civ. P. 4(n); Rolle v. Brevard County, Florida, No. 6:06-cv-714-ORL-19JGG, 2007 WL 328682 * 14 (M.D. Fla. Jan. 31, 2007).

The Defendants have filed a joint Motion for Summary Judgment as to all claims (Doc. 20), and MacMillan has filed a timely response in opposition (Doc. 26).[2]  The Court concludes that the Defendants' motion is due to be granted as to the Sheriff, and denied as to the Deputy Sheriffs.

### **Material Undisputed Facts**

On September 1, 2004, Defendants Lane Roddenberry and Shane Pitman - both Deputy Sheriffs with the Lake County Sheriffs Department - arrived at MacMillan's home in response to a domestic violence call made by MacMillian's live-in girlfriend, Holly Fertell. At the time the Deputies arrived at MacMillan's home, Fertell was outside of the house and MacMillan was inside the house with the front door closed.

The Deputies – who at the time were walking around the perimeter of the house – saw MacMillan in his bathroom and ordered MacMillan to raise his hands and freeze.  One of the Deputies then deployed his taser, striking MacMillan's bare chest.  MacMillan stumbled from the bathroom into the garage through the washroom door.  The door locked behind MacMillan, although he asserts he did not lock it.  The Deputies eventually entered the house and located MacMillan in the garage.  The Deputies, along with two or three other officers who had arrived at the scene, tased MacMillan several more times.  After

---

[2]The Defendants also seek summary judgment on a purported § 1983 claim for wrongful arrest and state law claims for assault and battery.  A review of the Complaint, however, confirms that no such claims have been raised, and the Plaintiff has made no argument in support of such claims.  The Court will not consider the Defendants' arguments on these issues any further.

some struggle, the Deputies and other officers arrested MacMillan and transported him to a hospital for treatment.[3]

Several x-rays were taken at the hospital, which did not show any fractures, and MacMillan was provided a metal knee brace for his left leg. MacMillan was then transported to the Lake County Jail and booked on charges of domestic violence, possession of controlled substances, and resisting arrest without violence. The domestic violence charge was dismissed by the prosecutor. MacMillan went to trial on the remaining charges, and on December 1, 2005 was found not guilty on all charges.

While incarcerated at the Lake County Jail, MacMillan complained to Jail personnel numerous times about pain in his left leg and asked to see a doctor and/or have an MRI performed on his leg. MacMillan fell several times while incarcerated, and was given crutches and a wheelchair, along with pain medication. Three days after his arrest, he returned to the hospital for more x-rays and additional pain medication. The x-rays – which are only capable of detecting fractures – did not show any abnormality.

In December 2004, after he had been incarcerated for approximately 45 days, MacMillan had a CT scan and finally saw a physician at the Jail, who also ordered an MRI of his left leg. The MRI was performed on January 5, 2005 and revealed that MacMillan

---

[3]MacMillan contends that he never resisted arrest, never threatened the officers, never engaged in any sort of offensive behavior, and was never given an opportunity to comply with the Deputies' orders before he was attacked and tased. The Deputies present a polar opposite version of events, testifying that MacMillan was very aggressive, hostile, and resistant to direct orders, and that there was a concern MacMillan may have had a firearm, all of which necessitated the use of force and tasers.

had a partial tear of his left quadriceps tendon, which required surgery.  MacMillan was released on bail on January 12, 2005, and subsequently underwent surgery to repair the tear.

### Summary Judgment Standard

Pursuant to Federal Rule of Civil Procedure 56(c)(2), the entry of summary judgment is appropriate only when the Court is satisfied that "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  In applying this standard, the Court must examine the materials on file and record evidence "in the light most favorable to the nonmoving party."  Samples on Behalf of Samples v. Atlanta, 846 F.2d 1328, 1330 (11th Cir. 1988).  As the Supreme Court held in Celotex Corp. v. Catrett, 477 U.S. 317 (1986), the moving party bears the initial burden of establishing the nonexistence of a triable issue of fact.  If the movant is successful on this score, the burden of production shifts to the non-moving party who must then come forward with "sufficient evidence of every element that he or she must prove."  Rollins v. Techsouth, 833 F.2d 1525, 1528 (11th Cir. 1987).  The non-moving party may not simply rest on the pleadings, but must use affidavits, depositions, answers to interrogatories, or other admissible evidence to demonstrate that a material fact issue remains to be tried.  Celetex, 477 U.S. at 324.  See also Fed. R. Civ. P. 56(e)(2).  The party opposing a motion for summary judgment must rely on more than conclusory statements or allegations unsupported by

4

facts.  Evers v. Gen. Motors Corp., 770 F.2d 984, 986 (11th Cir. 1985) ("conclusory

allegations without specific supporting facts have no probative value").

## Discussion

I    Count I - § 1983 Claim Against the Sheriff

In Count I of his Complaint (Doc. 1-2), MacMillan asserts a claim against Gary

Borders, Sheriff of Lake County, Florida, for violations of his Fourth and Fourteenth

Amendment rights.  More specifically, MacMillan contends that Borders had a policy,

custom, or practice of permitting the arbitrary and capricious use of excessive force and

tasers during arrests, and that this policy, custom, or practice was the proximate cause of

MacMillian's injuries.  MacMillan further contends that Borders was deliberately indifferent

to his serious medical needs, and deprived him of medical care for his leg while

incarcerated.  MacMillan has sued Borders in his official capacity only, which is the

functional equivalent of a suit against Lake County.  See Vineyard v. County of Murray,

Ga., 990 F.2d 1207, 1210 n. 3 (11th Cir. 1993); Busby v. City of Orlando, 931 F.2d 764,

776 (11th Cir. 1991).

## A.    Excessive Force Claim

In suits to redress constitutional torts under § 1983 the doctrine of respondeat

superior does not apply and there is no vicarious liability.  In order to hold a state actor

liable in an official capacity the plaintiff must show that the deprivation of a constitutional

right resulted from:  "(1) an action taken or policy made by an official responsible for

making final policy in that area of the [County's] business; or (2) a practice or custom that is so pervasive, as to be the functional equivalent of a policy adopted by the final policymaker." <u>Church v. City of Huntsville</u>, 30 F.3d 1332, 1343 (11th Cir.1994). <u>See</u> <u>also</u> <u>Cook ex rel. Estate of Tessier v. Sheriff of Monroe County, Florida</u>, 402 F.3d 1092, 1116 (11th Cir. 2005).

There is no evidence in the record that Borders personally and directly took any actions, or failed to take any actions, with respect to MacMillan's arrest or subsequent incarceration. In fact there is no evidence that Borders was even aware of MacMillan until the inception of this case. Similarly, there is no evidence of any formal written policies which encouraged the use of excessive force or tasers during arrests.[4] To the contrary, Borders has submitted evidence establishing that the Lake County Sheriff's Office had extensive policies concerning the use of force and the use of tasers, as well as policies governing investigatory and disciplinary procedures to deal with complaints against deputies. (Doc. 20-4, pp. 5-28). Thus, the only way MacMillan may go forward with this portion of his claim is if he can provide evidence of a widespread custom or practice of excessive force which Borders was aware of and permitted to go on.

---

[4]MacMillan has submitted a copy of an unauthenticated article entitled "An Overview of Electronic Control Devices and Their Use in Florida." (Doc. 27-6). This article, which was not created by the Lake County Sheriff's Office, clearly does not equate to a formal policy or practice, and there is no evidence - other than MacMillan's counsel's unsupported assertion - that anyone at the Lake County Sheriff's Office ever saw or utilized this article in any way.

On this point, MacMillan has submitted evidence of 15 citizen complaints of excessive force against the Sheriff's Office and Lake County Jail during the five years before and five years after MacMillan's arrest. These complaints, which average out to less than two per year, are simply not sufficient to establish a material issue of fact concerning a widespread custom or practice of excessive force. Indeed, standing alone, the complaints are meaningless and without any probative value. By the very nature of their activities, any law enforcement agency would be expected to receive some level of complaints from those who are arrested, and in the absence of (1) some statistical or other expert analysis of the number and type of complaints compared to the total number of arrests effected; and/or (2) some substantiation of a portion of the complaints by internal affairs or other comparable verification, the mere fact that some unsubstantiated complaints have been made is not notice of widespread abuses.

Moreover, none of the complaints presented here involved factual situations that are substantially similar to the case at hand. Only ten of the complaints were made prior to MacMillan's arrest,[5] and of those ten, only one involved the use of a taser (the only aspect

---

[5]MacMillan contends that the five complaints made after MacMillan's arrest are also relevant and should be considered as part of a widespread pattern or custom of unlawful excessive force. The Court disagrees. Incidents that occurred <u>after</u> MacMillan's arrest cannot establish a pattern of "widespread prior abuse" such that Borders should have been on notice of a problem involving the use of excessive force, which he did not correct, and which caused MacMillan's injuries. <u>See</u> <u>Wright v. Sheppard</u>, 919 F.2d 665, 674 (11th Cir. 1990); <u>Timmons v. Polk County Sheriff's Office</u>, No. 8:09-cv-1190-T-17TGW, 2009 WL 4249553 (M.D. Fla. Nov. 25, 2009); <u>Thomas v. City of Clanton</u>, 285 F. Supp. 2d 1275, 1283 (M.D. Ala. 2003). Even if the Court were to consider these five additional complaints, they would not defeat summary judgment. Two of the five complaints involved allegations of force against Jail inmates, none involved the use of

(continued...)

of similarity the Court could find between MacMillan's arrest and these other complaints). (Doc. 33-1, pp. 1-3).   Several of the complaints involved claims of excessive force against persons already incarcerated, two of the complaints were withdrawn, and all of the complaints were the subject of internal affairs investigations and found to be without merit. This minimal evidence is insufficient to show "a widespread practice that . . . is so permanent and well settled as to constitute a 'custom or usage' with the force of law." Griffin v. City of Opa-Locka, 261 F.3d 1295, 1308 (11th Cir. 2001).  See also Mercado v. City of Orlando, 407 F.3d 1152, 1162 (11th Cir. 2005) (finding no municipal liability where plaintiff could not show that any other complaints of excessive force involved factual situations that were substantially similar to the plaintiff's incident); Holloman ex rel. Holloman v. Harland, 370 F.3d 1252, 1294 (11th Cir. 2004) ("Our precedents are clear that, for constitutional violations to be sufficiently 'widespread' for a governmental supervisor to be held liable, they need occur with frequency"); Brooks v. Scheib, 813 F.2d 1191, 1193 (11th Cir. 1987) (holding that City did not have any notice of past police misconduct because the plaintiff did not demonstrate that the ten past complaints of misconduct had any merit); Ott v. City of Mobile, 169 F. Supp.2d 1301, 1310-12 (S.D. Ala. 2001) (evidence of four substantiated complaints in the five years preceding the incident was insufficient to establish a question of fact regarding municipal liability under either a custom or policy or failure to train).

---

[5](...continued)
a taser, and all were investigated and determined to be meritless.  (Doc. 33-1, pp. 3-4).

MacMillan has cited to a host of decisions from this and other jurisdictions which he contends establish that unfounded citizen complaints of excessive force are sufficient to establish a custom, pattern, or practice such that § 1983 liability attaches. Each of these decisions is readily distinguishable from the present case and are not persuasive. See Larez v. City of Los Angeles, 946 F.2d 630 (9th Cir. 1991) (affirming judgment against city where evidence established that police department established its own unit, rather than internal affairs, to investigate complaints against it, and that such a policy was improper police practice); Bordanaro v. McLeod, 871 F.2d 1151 (1st Cir. 1989) (affirming judgment against municipality where testimony established a longstanding police department policy of breaking down doors without a warrant when arresting felons); Depew v. City of St. Marys, Georgia, 787 F.2d 1496 (11th Cir. 1986) (affirming verdict against city where police chief admitted the existence of disciplinary problems among his officers concerning the use of excessive force, and city had previously settled two lawsuits but took no corrective action against the officers involved); Herrera v. Valentine, 653 F.2d 1220 (8th Cir. 1981) (affirming jury verdict against city where both city council and county attorney were directly notified of a pattern of abuse and excessive force and did nothing to correct it). Several of the decisions actually defeat MacMillan's claim. See Carter v. District of Columbia, 795 F.2d 116 (D.C. Cir. 1986) (arrestees failed to establish a persistent, pervasive pattern of police misconduct attributable to a course deliberately pursued by official policymakers where evidence consisted of scattered and isolated occurrences with little or no detail); Fiacco v. City of Rensselaer, New York, 783 F.2d 319 (2d Cir. 1986) (complaints of excessive force

are insufficient to establish a policy of inadequate training and/or lack of discipline where complaints were investigated and found unsubstantiated); Owens v. City of Ft. Lauderdale, 174 F. Supp. 2d 1282 (S.D. Fla. 2001) (finding that allegations of six prior choking incidents were insufficient to establish a widespread pattern of prior abuse concerning the police's use of choke holds)[6]

The only decision arguably supporting MacMillan's position is Grandstaff v. City of Borger, Texas, 767 F.2d 161 (5th Cir. 1985), in which the Fifth Circuit held that a single incident of excessive force was sufficient to create municipal liability under § 1983. Grandstaff, however, involved the use of excessive deadly force, where evidence was produced at trial of "incompetent and catastrophic performance" by the police officers, and the complete lack of any disciplinary action or change in police polices following the event. The Fifth Circuit then held that the lack of any official reaction to "so gross an abuse of the use of deadly weapons says more about the existing disposition of the City's policymaker than would a dozen incidents where individual officers employed excessive force." 767 F.2d at 171. In the present case, however, MacMillan has not presented any evidence which even approaches the abuses established in Grandstaff, and therefore the Court declines to apply it in this case.

---

[6]Still other cases cited by MacMillan do not even address the sufficiency of evidence necessary to establish a custom, pattern, or practice. See Torres v. Kuzniasz, 936 F. Supp. 1201 (D. N.J. 1996) (discovery dispute concerning production of internal affairs files of citizen complaints).

Given the lack of any widespread pattern of prior abuse, MacMillan's claim of excessive force against Borders in his official capacity cannot go forward.

## B. Deliberate Indifference Claim

The second portion of MacMillan's claim alleges that Borders was deliberately indifferent to MacMillan's serious medical needs while incarcerated at the Lake County Jail, resulting in permanent injury to MacMillan's left leg. There is no evidence that Borders was personally involved in any way with the medical care MacMillan received while a pretrial detainee, and MacMillan concedes this point. Instead, he argues that Borders "is liable vicariously through the conduct of his medical staff at his jail if they are deemed to have acted with deliberate indifference." See Doc. 26, p. 22, n. 9.

MacMillan's claim fails as a matter of law because a claim for deliberate indifference brought against a state actor in his official capacity only which is premised solely on a theory of vicarious liability does not exist under 42 U.S.C. § 1983. Cook, 402 F.3d at 1115-16 ("Thus, to succeed on her § 1983 claim, [the plaintiff] must establish that the Sheriff himself, as representative of Monroe County, was deliberately indifferent to the possibility of [the decedent's] suicide, since neither respondeat superior nor vicarious liability exists under § 1983.") (citing Belcher v. City of Foley, 30 F.3d 1390, 1396 (11th Cir. 1994)). See also Goebert v. Lee County, 510 F.3d 1312, 1331 (11th Cir. 2007); Cottone v. Jenne, 326 F.3d 1352, 1360 (11th Cir. 2003); Hartley v. Parnell, 193 F.3d 1263, 1269 (11th Cir. 1999); Ancata v. Prison Health Servs., Inc., 769 F.2d 700 (11th Cir. 1985);

<u>Kennedy v. Gee</u>, No. 8:09-CV-361-T-30TGW, 2009 WL 1514621 at * 2 (M.D. Fla. May 28, 2009). MacMillan has presented no legal authority to suggest otherwise.[7]

Thus, the only way MacMillan could pursue an official capacity claim of deliberate indifference against Borders (in the absence of his personal participation in MacMillan's incarceration) would be to present evidence creating a material issue of fact as to whether Borders was on notice of a history of widespread abuse at the Jail, or whether he had established customs or policies resulting in deliberate indifference to MacMillan's constitutional rights. <u>See</u> <u>Bd. of County Comm'rs v. Brown</u>, 520 U.S. 397, 400 (1997); <u>McDowell v. Brown</u>, 392 F.3d 1283, 1289 (11th Cir. 2004); <u>Grech v. Clayton County, Ga.</u>, 335 F.3d 1326, 1329-30 (11th Cir. 2003); <u>Hale v. Tallapoosa County</u>, 50 F.3d 1579, 1582 (11th Cir. 1995). The record evidence before the Court simply does not satisfy this standard.

As with the excessive force claim, MacMillan has not presented any evidence that Borders established any custom or policy of denying inmates medical care.[8] And, other

---

[7]All of the decisions cited by MacMillan in his opposition papers either involved state actors who were sued in their individual capacity, <u>see</u> <u>McElligot v. Foley</u>, 182 F.3d 1248 (11th Cir. 1999); <u>Campbell v. Sikes</u>, 169 F.3d 1353 (11th Cir. 1999); <u>Lancaster v. Monroe County, Ala.</u>, 116 F.3d 1419 (11th Cir. 1997); <u>Harris v. Coweta</u>, 21 F.3d 388 (11th Cir. 1994); <u>Waldrop v. Evans</u>, 871 F.2d 1030 (11th Cir. 1989), or involved state officials who were personally and directly involved in the injuries suffered by the plaintiffs and/or were the final policymakers who actually created policies which caused the constitutional deprivations. <u>See</u> <u>Steele v. Shah</u>, 87 F.3d 1266 (11th Cir. 1996); <u>LaMarca v. Turner</u>, 995 F.2d 1526 (11th Cir. 1993); <u>Williams v. Griffin</u>, 952 F.2d 820 (4th Cir. 1991); <u>Brown v. Hughes</u>, 894 F.2d 1533 (11th Cir. 1990); <u>Mandel v. Doe</u>, 888 F.2d 783 (11th Cir. 1989). None of the decisions involved vicarious liability.

[8]To the contrary, Borders has submitted copies of the Florida Model Jail Standards which
(continued...)

than his own treatment, MacMillan has presented evidence of only two isolated complaints which even touch on the question of medical care. The first complaint, which took place in 2002 at the Lake County Jail, reads: "Complainant advised he was in lockdown for 24 hours a day and that his medications were being reduced. No policy violations. Result: Unfounded. Destruct 12/31/02." (Doc. 33-1, p. 2). Aside from the fact that this complaint amounts to inadmissible hearsay, it bears absolutely no similarity to the facts of MacMillan's case. On its face, this 2002 complaint relates to a reduction of unknown medications, for an unknown ailment(s), of an unknown inmate, under unknown circumstances.

The second complaint took place six (6) years later at some time in 2008, more than three (3) years after MacMillan was released from custody. This complaint involved an inmate who claimed that a Deputy Sheriff used excessive force during the inmate's arrest, and that medical staff at the Lake County Jail refused to take the inmate's complaints of pain seriously. (Doc. 33-1, pp 4-15; Doc. 33-2, pp. 1-5). The complaint was the subject of an internal affairs investigation, which determined that the inmate did in fact receive appropriate medical care, and that his injuries were most likely self-inflicted.

These two isolated complaints, which bear little resemblance to each other or to MacMillan's claim, are not sufficient to establish a widespread custom or policy, or to place Borders on notice of an unconstitutional policy of deliberate indifference to inmate medical

---

[8](...continued)
govern the provision of medical care to inmates. (Doc. 20-4, pp. 29-36).

care.  West v. Tillman, 496 F.3d 1321, 1329 (11th Cir. 2007) (" 'The deprivations that constitute widespread abuse sufficient to notify the supervising official must be obvious, flagrant, rampant, and of continued duration, rather than isolated occurrences.'") (quoting Hartley, 193 F.3d at 1269)).  See also Marsh v. Butler County, Ala., 268 F.3d 1014, 1037 (11th Cir. 2001); Griffin, 261 F.3d at 1308.  MacMillan also cannot cure this deficiency by simply referring to his own treatment at the Jail.  See Thompson v. Spears, 336 F. Supp. 2d 1224, 1236 (S.D. Fla. 2004) (holding that a plaintiff must produce more than his own claims to prove a custom under § 1983); Engelleiter v. Brevard County Sheriff's Dept., 290 F. Supp. 2d 1300, 1313-14 (M.D. Fla. 2003) (same).

Borders cannot be held liable in his official capacity for deliberate indifference with respect to MacMillan's medical treatment at the Lake County Jail.

## C.     Failure to Train and/or Supervise Claim

MacMillan also alleges in his Complaint that Borders failed to properly train and supervise his Deputy Sheriffs with respect to the use of force and/or tasers during arrest, and that Borders failed to properly train and supervise Jail personnel as to the provision of medical treatment to pretrial detainees.  Section 1983 liability only attaches where "the failure to train amounted to 'deliberate indifference' to the rights of persons with whom the [officers] come into contact."  City of Canton, Ohio v. Harris, 489 U.S. 378, 388, 109 S. Ct. 1197, 1204, 103 L.Ed.2d 412 (1989); see also Gold v. City of Miami, 151 F.3d 1346, 1350 (11th Cir. 1998).  Because the Court has already determined that there is insufficient

evidence to create a material issue of fact as to the existence of a widespread pattern of prior abuse, the Court concludes that there is also insufficient evidence as to whether Borders was on notice of any systemic unlawful use of excessive force and/or denial of medical care. Accordingly, this portion of MacMillan's claim also fails. "[W]ithout notice of a need to train or supervise in a particular area, [Borders] is not liable as a matter of law for any failure to train and supervise." Gold, 151 F.3d at 1351. See also Trammell v. Paxton, 322 Fed. Appx. 907, 911 (11th Cir. 2009); Popham v. City of Talladega, 908 F.2d 1561, 1564-65 (11th Cir. 1990).

Summary judgment shall be granted as to Count I.

II.    Counts II and III - § 1983 Claims Against Roddenberry and Pitman

Counts II and III of MacMillan's Complaint (Doc. 1-2) allege claims of excessive force against Roddenberry and Pitman in both their official and individual capacities. Summary judgment is warranted as to the official capacity portion of these claims because such claims are the functional equivalent of § 1983 claims against governmental unit the individuals work for, and are duplicative of the claims made against the Sheriff. See Monell v. New York City Dept. of Social Services, 436 U.S. 658, 690, n. 55 (1978); Busby v. City of Orlando, 931 F.2d 764, 776 (11th Cir. 1991).

With respect to the individual capacity portions of Counts II and III, the Deputies contend they are protected by the doctrine of qualified immunity. Pearson v. Callahan, 555 U.S. ___, 129 S.Ct. 808, 818 (2009); Saucier v. Katz, 533 U.S. 194, 201 (2001); Bryant v. Jones, 575 F.3d 1281, 1295 (11th Cir. 2008). In particular, they allege that the undisputed

material facts demonstrate as a matter of law that they did not violate MacMillan's constitutional rights – *i.e.*, they did not use excessive force during MacMillan's arrest.[9]

A review of the submitted evidence in the light most favorable to MacMillan shows that there are numerous material facts still in dispute concerning almost every aspect of the these claims. Both sides have presented deposition testimony and other evidence supporting dramatically different versions of the events of September 1, 2004. On the one hand, MacMillan testified at his deposition that he was not behaving in a violent, threatening, or aggressive manner and did not resist arrest in any way. On the other hand, Roddenberry and Pitman have presented some evidence that MacMillan did resist arrest, acted in a threatening manner, and that there was a concern at the time that MacMillan was in possession of a firearm. Thus, in order to resolve MacMillan's claim, the Court would have to determine which testimony was more believable and entitled to more weight, and such credibility determinations are the responsibility of the ultimate trier of fact, not the Court's at summary judgment. See Powell v. Haddock, No. 09-14944, 2010 WL 476706 (11th Cir. Feb. 12, 2010); Sanchez v. Hialeah Police Dept., No. 09-11821, 2009 WL 4829872 (11th Cir. Dec. 16, 2009).

---

[9]It is beyond dispute that if unlawful excessive force was used during the Plaintiff's arrest, it would constitute a violation of the Plaintiff's constitution rights, which was clearly established at the time of the Plaintiff's arrest. See Vinyard v. Wilson, 311 F.3d 1340, 1347 (11th Cir. 2002); Lee v. Ferraro, 284 F.3d 1188, 1199 (11th Cir. 2002). There is also no dispute that the Plaintiff's injuries – a torn muscle in his leg resulting in surgery and permanent damage – are more than *de minimus*.

Summary judgment will be denied as to the individual capacity portions of Counts II and III.

## Conclusion

Accordingly, upon due consideration, it is hereby ORDERED as follows:

(1)     The Defendants' Motion for Summary Judgment (Doc. 20) is GRANTED IN PART AND DENIED IN PART.  Summary judgment is granted in favor of Defendants Lane Roddenberry and Shane Pittman and against Plaintiff David MacMillan with respect to the official capacity portions of Counts II and III of the Complaint (Doc. 1-2).  Summary judgment is also granted in favor of Defendant Gary Borders, Sheriff of Lake County, Florida and against the Plaintiff as to all claims.  In all other respects, the Defendants' Motion for Summary Judgment is DENIED.

(2)     The claims against various "John Doe" Defendants are DISMISSED WITHOUT PREJUDICE.

(3)     The Clerk is directed to withhold the entry of judgment pending resolution of all remaining claims.

(4)     The Amended Motion to Strike of Defendants Roddenberry, Pitman, and Sheriff Borders (Doc. 35) is DENIED.

(5)     In light of the fact that the Court has granted summary judgment on the official capacity claims against Defendant Borders, the introduction of all but one of the citizen complaints is no longer relevant to any remaining issue in this case.  The portion of the

Defendants' Motion in Limine (Doc. 45) relating to citizen complaints is therefore GRANTED as to all citizen complaints except for the July 2007 complaint concerning Pitman, and the Plaintiff shall not make any argument, elicit testimony, or present any evidence at trial of such citizen complaints concerning any Deputy Sheriff or employee of the Lake County Sheriff's Office, or any employee, agent, or official of the Lake County Jail.

(6)     The Court shall CARRY WITH THE CASE the Defendants' motion with respect to the July 2007 complaint, and the Plaintiff shall not make any argument, elicit testimony, or introduce any evidence at trial concerning the July 2007 complaint against Defendant Pitman until the Court rules on the Defendants' motion.

(7)     The portion of the Defendants' Motion in Limine (Doc. 45) relating to the Plaintiff's purported use of expert witnesses – which the Plaintiff has not yet responded to – is CARRIED WITH THE CASE and shall be addressed at trial if necessary.

(8)     The Plaintiff's Motion in Limine (Doc. 43) is CARRIED WITH THE CASE and shall be addressed at trial if necessary.  The Defendants shall not make any argument, elicit testimony, or introduce any evidence at trial concerning either the Plaintiff's prior arrests or his steroid use until after the Court rules on the Plaintiff's motion.

(9)     The Parties shall have until the close of business on Tuesday, February 23, 2010 to file any amended exhibit lists.

(10)    The Joint Pretrial Statement (Doc. 44) is ADOPTED AND CONFIRMED, will control the course of the trial, and may not be further amended except by order of this Court pursuant to Rule 3.06 of the Local Rules of the Middle District of Florida.

IT IS SO ORDERED.

DONE and ORDERED at Ocala, Florida this 19th day of February, 2010.

*[signature]*

UNITED STATES DISTRICT JUDGE

Copies to:    Counsel of Record